JS 44 (Rev 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Christen Hartman

**DEFENDANTS**

Reading Hospital; Tower Health; Tower Health Medical Group

**(b)** County of Residence of First Listed Plaintiff   York County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Berks County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U S Government
Plaintiff
- ☒ 3  Federal Question
*(U.S. Government Not a Party)*
- ☐ 2  U S Government
Defendant
- ☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §12101, et seq.; 29 U.S.C. §2601, et seq.

Brief description of cause:
Plaintiff was discriminated against because of her disability.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
12/13/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Hanover, PA 17331 _____

Address of Defendant: _____ 20 S. 5th Avenue; West Reading, PA 19611 _____

Place of Accident, Incident or Transaction: _____ 20 S. 5th Avenue; West Reading, PA 19611 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/13/2023 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 205900 *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Caren N. Gurmankin _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 12/13/2023 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 205900 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Christen Hartman                          :                    CIVIL ACTION
                                          :
                          v.              :
                                          :
Reading Hospital, et al.                  :
                                          :                    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( X )

---
12/13/2023                    _[signature]_                    Plaintiff, Christen Hartman
**Date**                      **Attorney-at-law**              **Attorney for**

215-545-7676                  215-405-2900                     gurmankin@consolelaw.com
---
**Telephone**                 **FAX Number**                   **E-Mail Address**

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **CHRISTEN HARTMAN** | : | |
| **Hanover, PA 17331** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **READING HOSPITAL** | : | |
| **20 S. 5th Avenue** | : | |
| **West Reading, PA 19611** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TOWER HEALTH** | : | **JURY TRIAL DEMANDED** |
| **420 S. Fifth Avenue West** | : | |
| **Reading, PA 19611** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TOWER HEALTH MEDICAL GROUP** | : | |
| **420 S. Fifth Avenue West** | : | |
| **Reading, PA 19611** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Christen Hartman, brings this action against her former employers,

Reading Hospital; Tower Health; and, Tower Health Medical Group (together

"Defendants").  Plaintiff was terminated based on her medical conditions, her requests for

accommodations in connection with the same, and her medical leaves of absence.

Defendants' discriminatory and retaliatory conduct towards Plaintiff violated the

Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), the Family Medical Leave Act, as amended, 29 U.S.C. §2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

## II.    PARTIES

1.      Plaintiff, Christen Hartman, is an individual and a citizen of the Commonwealth of Pennsylvania.  She resides in Hanover, PA 17331.

2.      At all times material hereto, Plaintiff was employed for at least twelve hundred and fifty (1,250) hours of service during the twelve (12) month period prior to her termination in October 2021.

3.      Defendant, Reading Hospital, is an entity with a principal place of business at 420 S. Fifth Avenue West, Reading, PA 19611.

4.      Defendant, Tower Health, is an entity with a principal place of business at 420 S. Fifth Avenue West, Reading, PA 19611.

5.      Defendant, Tower Health Medical Group, is an entity with a principal place of business at 420 S. Fifth Avenue West, Reading, PA 19611.

6.      Defendant, Tower Health Medical Group, was the entity that paid Plaintiff.

7.      The website for Defendants includes that, "Reading Hospital is the flagship, Magnet Recognized, acute care hospital of Tower Health."

8.      At the time of Plaintiff's termination, she worked for Defendants' Tower Health Medical Group – Reading Obstetrics and Gynecology in Exeter, PA.

9.      To Plaintiff's information and belief, Defendant, Reading Hospital, provided resources to Plaintiff's practice group within Defendant Tower Health Medical

Group so that they could provide services to their patients.

10.     Upon Plaintiff's termination, she was provided a "Tower Health" Transition Guide.

11.     Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

12.     At all times material hereto, Defendants employed more than fifteen (15) employees.

13.     At all times material hereto, Defendants employed more than fifty (50) employees at Plaintiff's workplace and/or within seventy five (75) miles of Plaintiff's workplace.

14.     At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

15.     At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

16.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

## III.    <u>JURISDICTION AND VENUE</u>

17.     The causes of action which form the basis of this matter arise under the ADA, the FMLA, and the PHRA.

18.     The District Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

19.     The District Court has jurisdiction over Count II (FMLA) pursuant to 29

U.S.C. §2617(a)(2) and 28 U.S.C. §1331.

20.    The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

21.    Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

22.    On or about January 31, 2022, Plaintiff filed a Complaint with the PHRC, complaining of acts of discrimination alleged herein.  Her Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

23.    On or about September 18, 2023, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for her PHRC Complaint.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

24.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

25.    Plaintiff started working at Defendant Reading Hospital on or about May 30, 2013.

26.    Defendant Reading Hospital became part of Defendant Tower Health in or around fall 2017.

27.    As of the time of Plaintiff's termination, she held the position of Surgical Coordinator and Patient Service Representative.

28.     As of the time of Plaintiff's termination, she reported to Dawn Hoffman, Practice Coordinator.  Hoffman reported to Tina Ziolkowski, Women's Health Administrator.

29.     Plaintiff consistently performed her job duties in a highly competent manner, and received positive feedback.

30.     On or about November 8, 2018, Plaintiff went to the hospital from work at Defendants because of severe facial swelling and hives that she was experiencing. Defendants were aware of the same.

31.     On or about November 10, 2018, Plaintiff was diagnosed with a malignant brain tumor called a clival chordoma.

32.     A clival chordoma is a rare bone tumor that forms at the base of the skull or along the spine.

33.     In Plaintiff's case, her tumor was at the base of her skull and around her brain stem.

34.     When Plaintiff learned of her diagnosis, she also learned that she would have to undergo surgery to remove the tumor.

35.     On the day following her diagnosis, Plaintiff informed Donna Trovarello, Practice Manager and her direct supervisor at the time, of her medical treatment and that she would have to undergo surgery for the same.

36.     Shortly after Plaintiff's diagnosis, she informed Ziolkowski, her second-level supervisor, about her medical condition and that she would have to undergo surgery for the same.

37.     Plaintiff also informed Defendants' Human Resources employees about

her diagnosis, surgery, and need for medical leave.

38.    On or about January 24, 2019, Plaintiff went on approved medical leave pursuant to the FMLA.

39.    On or about January 25, 2019, Plaintiff underwent surgery for the removal of her brain tumor.

40.    Plaintiff remained out of work on approved medical leave until on or about August 26, 2019.

41.    During Plaintiff's medical leave, she underwent radiation treatment following her surgery.

42.    During Plaintiff's medical leave, her spouse kept Defendants informed about her condition and treatment.

43.    To Plaintiff's information and belief, Defendants advised Plaintiff's spouse that they wanted her to return to work the day after her last radiation treatment, in July 2019.

44.    Defendants eventually agreed to extend Plaintiff's medical leave beyond her last radiation treatment.

45.    On or about August 26, 2019, Plaintiff to returned to work from her medical leave of absence.

46.    Following Plaintiff's return to work from medical leave, she continued to undergo regular, monthly, scans (MRIs) so that her doctors could monitor her.

47.    Following Plaintiff's return to work from medical leave, she was on medication for continued treatment of her condition.

48.    Defendants were aware of Plaintiff's continued monitoring and treatment

for her medical condition.

49.     In or around December 2019, Plaintiff's doctors discovered new lesions on her brain.

50.     As a result of the new lesions on her brain, Plaintiff had continued medical issues, including, but not limited to, mini-strokes; swallowing issues; numbness in her arms and legs; dropping things; issues with her vision and hearing on one side; and, needing a cane to walk and get around.

51.     As a result of the new lesions on her brain, Plaintiff had to undergo continued appointments and testing regarding the new lesions on her brain so that her doctors could try to figure out what the problem was and how to treat it.

52.     Defendants were aware of Plaintiff's continued medical issues, and appointments and tests in connection with the same.

53.     On or about March 30, 2020, Plaintiff began working from home as a result of the Covid-19 pandemic and her medical condition, which left her immunocompromised.

54.     On or about April 8, 2020, Plaintiff was told that she could no longer work from home and that she had to return to work in the office because others in her position were not permitted to work from home.

55.     Plaintiff requested a reasonable accommodation to continue working from home, given that she was considered high-risk and immunocompromised due to her medical condition.

56.     Defendants granted Plaintiff's continued request to work from home after her doctor submitted documentation on her behalf regarding her request.

57.     Plaintiff continued to leave work to attend doctors' appointments and tests in connection with her continued medical issues.

58.     Defendants were aware of Plaintiff's continued medical issues, and her continued doctors' appointments in connection with the same.

59.     To Plaintiff's information and belief, other employees at Defendants made comments expressing doubt about her medical condition, and need for continued accommodation.

60.     On or about July 28, 2021, Plaintiff attempted suicide.

61.     Plaintiff and her spouse advised Defendants, including Hoffman, to whom Plaintiff reported directly at the time, about Plaintiff's suicide attempt.

62.     Following Plaintiff's suicide attempt, she was in the hospital until on or about August 5, 2021.

63.     Plaintiff's spouse kept Defendants apprised of Plaintiff's medical condition and her continued hospitalization.

64.     On or about August 8, 2021, Plaintiff's spouse informed Hoffman that Plaintiff had been discharged from the hospital and should be ready to return to work on the following day.  Hoffman told Plaintiff's spouse that Plaintiff should contact her on August 9th.

65.     On or about August 9, 2021, Hoffman told Plaintiff that she had been placed on medical leave pursuant to the FMLA and could not return to work until she submitted documentation from her doctor.

66.     Plaintiff's doctor submitted the required documentation to Defendants on or about August 13, 2021.

67.     On or about August 16, 2021, Defendants informed Plaintiff that she was in danger of being written up for "no call, no show" because she had not returned to work and did not call out.

68.     Plaintiff was instructed to contact her manager every day that she would be out of the office until Defendants approved her leave of absence.

69.     On around that same day, Plaintiff advised Defendants that her doctor had cleared her to return to work on August 18, 2021.

70.     Defendants then informed Plaintiff that, in order to return to work, she would need clearance from Defendants' Employee Health.

71.     On or about August 17, 2021, after Plaintiff had submitted documentation from her doctor clearing her to return to work on the following day, Hoffman told her that she could not return to work on August 18, 2021.

72.     Hoffman told Plaintiff to meet her in the office on August 23, 2023 to discuss Plaintiff's job.

73.     Hoffman told Plaintiff that following her return on August 23, 2023, she would continue working, in-person, from the office and would no longer be permitted to continue with her accommodation of working from home.

74.     When Plaintiff asked why she would not be permitted to work from home any longer, Hoffman refused to answer her question.

75.     After Plaintiff complained to Defendants' Human Resources about Hoffman's instructions that she report to work in-person on August 23rd, and that she would no longer be able to work from home, she was told to have her doctor complete a new accommodation form and that she did not have to report to work in-person.

9

76.     On or about August 25, 2021, Plaintiff submitted a new form regarding her continued request to work from home due to her medical conditions.

77.     On or about August 31, 2021, Defendants informed Plaintiff that they had extended her medical leave to September 6, 2021.

78.     On or about September 7, 2021, Plaintiff reached out to Defendants regarding her return to work.

79.     In response to Plaintiff's inquiry, Defendants told her that Human Resources would look into the issue and that they would need to contact Defendants' Employee Health and Leave Management regarding the same.

80.     On or about September 13, 2021, Plaintiff again reached out to Defendants regarding her return to work.

81.     Plaintiff was told that Human Resources did not have any updates for her and that they would contact Defendants' Employee Health and Leave Management regarding the same.

82.     On or about September 14, 2021, Plaintiff again reached out to Defendants regarding her return to work.

83.     Plaintiff again was told that Human Resources did not have any updates for her and that they would contact Defendants' Employee Health and Leave Management regarding the same.

84.     Plaintiff reminded Defendants that she had been trying to return to work for weeks, and that she was frustrated that she had not been called back and that there were still no answers for her as to when she could return.

85.     Plaintiff again reached out to Defendants regarding her return to work on

or about September 21, 2021.  Plaintiff was given the same information that she had been given previously, that Human Resources did not have any updates for her and that they would contact Employee Health and Leave Management regarding the same.

86.    It was only after Plaintiff requested that the matter be escalated to a higher level that she was transferred to speak with a different employee in Human Resources.

87.    Plaintiff then explained her situation, and her multiple attempts to return to work after being cleared by her doctors to do so, to two different Human Resources employees.

88.    On or about September 23, 2021, Plaintiff requested an update regarding her return to work.

89.    On or about September 27, 2021, Plaintiff received a message from one of the Human Resources employees to whom she had spoken regarding her return saying that she was hoping to schedule a call for Plaintiff and Hoffman.  Plaintiff responded that she was available.

90.    On or about September 29, 2021, Defendants' Human Resources advised Plaintiff that they had scheduled a call with Hoffman, Ziolkowski, and Plaintiff on October 1, 2021.

91.    Plaintiff responded that she had been pushed off since she was cleared to return to work on August 18, 2021, and that she needed answers.

92.    On or about October 1, 2021, Defendants terminated Plaintiff's employment, effective immediately.

93.    Plaintiff was told that she was being terminated because, due to her medical leave, Defendants were forced to absorb her job duties and her position was

eliminated.

94.    When Plaintiff asked whether there were any other open positions into which she could be transferred, she was told that Defendants no longer needed her.

95.    Plaintiff was told that Defendants could no longer accommodate her medical conditions or grant her request for a reasonable accommodation to continue working remotely.

96.    Defendants' asserted reasons for terminating Plaintiff's employment were pretextual.

97.    Defendants retaliated against Plaintiff for exercising her rights to FMLA leave.

98.    At all material times hereto, Plaintiff was disabled, and/or had a record of a disability, and/or was regarded as being disabled, within the meaning of the ADA and the PHRA.

99.    Plaintiff's disabilities, including her record of disabilities and Defendants' regarding her as having disabilities were motivating and determinative factors in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including, but not limited to, the termination of Plaintiff.

100.    Plaintiff's requests for accommodation were motivating and determinative factors in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including the termination of Plaintiff.

101.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering,

embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

102.    The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

## COUNT I – ADA

103.    Plaintiff incorporates herein by reference paragraphs 1 through 102 above, as if set forth herein in their entirety.

104.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

105.    Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

106.    As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

107.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

108.    No previous application has been made for the relief requested herein.

## COUNT II – FMLA

109.    Plaintiff incorporates herein by reference paragraphs 1 through 108 above, as if set forth herein in their entirety.

110. Defendants, by terminating Plaintiff for use of protected leave, have retaliated against Plaintiff and violated the FMLA.

111. As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

112. Defendants acted without good faith or reasonable grounds for believing that their acts did not violate the FMLA and the imposition of liquidated damages is warranted.

113. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless and until the Court grants the relief requested herein.

114. No previous application has been made for the relief requested herein.

## **COUNT III – PHRA**

115. Plaintiff incorporates herein by reference paragraphs 1 through 114 above, as if set forth herein in their entirety.

116. Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

117. Said violations were intentional and willful.

118. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

119.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

120.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of the ADA;

(b)    declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)    declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)    enjoining and permanently restraining the violations alleged herein;

(e)    entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(f)    awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's

pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper

conduct;

(h)     awarding punitive damages to Plaintiff under the ADA;

(i)     awarding liquidated damages to Plaintiff under the FMLA;

(j)     awarding Plaintiff such other damages as are appropriate under the

ADA, the FMLA, and the PHRA;

(k)     awarding Plaintiff the costs of suit, expert fees and other

disbursements, and reasonable attorney's fees; and,

(l)     granting such other and further relief as this Court may deem just,

proper, or equitable including other equitable and injunctive relief providing restitution

for past violations and preventing future violations.


                              **CONSOLE MATTIACCI LAW, LLC**


Dated: December 13, 2023        BY:    /s/ Caren N. Gurmankin___
                                       Caren N. Gurmankin, Esq.
                                       1525 Locust St., 9th Floor
                                       Philadelphia, PA 19102
                                       (215) 545-7676

                                       Attorney for Plaintiff,
                                       Christen Hartman

Exhibit "1"

Received

JAN 3 1 2022

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                        :

**CHRISTEN HARTMAN**                :           Docket No. 202101741

v.                                  :

RESPONDENTS:                        :

**TOWER HEALTH**                    :

and                                 :

**TOWER HEALTH MEDICAL GROUP**      :

and                                 :

**READING HOSPITAL**                :

1.  The Complainant herein is:

    Name:       Christen Hartman

    Address:    ██████████████████

2.  The Respondents herein are:

    Names:     Tower Health; Tower Health Medical Group; Reading Hospital

    Address:   420 S. 5th Avenue
                 West Reading, PA 19611

3.  I, Christen Hartman, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and retaliation for seeking reasonable accommodations for my disability, as set forth below.

## Discrimination and Retaliation

### A. I specifically allege:

[1]     I began working at Respondents on or about May 30, 2013.

[2]     I consistently performed my job duties in a highly competent manner, and received positive feedback.

[3]     I last held the position of Surgical Coordinator.

[4]     I last reported to Dawn Hoffman, Practice Coordinator. Hoffman reported to Tina Ziolkowski, Women's Health Administrator.

[5]     At the time of my termination, the following employees were reporting to Hoffman. I was qualified to perform each of the Patient Service Representative positions.

(a) Kelly Piazza, Patient Service Representative;

(b) Tammy Woods, Patient Service Representative;

(c) _____, Patient Service Representative;

(d) Kelly Williams, Medical Assistant;

(e) Shelly Schnabel, Sonographer;

(f) Jackie Mathias, Licensed Practical Nurse;

(g) Brittney Hiester, Licensed Practical Nurse;

(h) Kathy Baransky, Registered Nurse.

[6]     On or about November 8, 2018, I was diagnosed with a brain tumor, clival chordoma, and learned that I required surgery.

[7]     On or about November 9, 2018, I informed Donna Trovarello, Practice Manager, of my brain tumor diagnosis and that I required surgery.

[8]     On January 24, 2019, I went out of work on an FMLA-protected medical leave of absence.

[9]     On January 25, 2019, I underwent surgery to remove my brain tumor.

[10]     From January 24, 2019, 2019 to August 26, 2019, I was out of work on a medical leave of absence in connection with my disability.

[11]     From May 13, 2019 through July 9, 2019, I underwent proton beam radiation as treatment for my brain tumor. Respondents were aware that I was undergoing radiation as treatment for my brain tumor.

[12]     On August 26, 2019, I returned to work from my medical leave of absence.

[13]     On March 30, 2020, I began working from home due to the COVID-19 pandemic.

[14]     On April 8, 2020, I was instructed to return to work in the office on April 10, 2020.

[15]     On April 8, 2020, in an email to Kimberly Farinelli, Human Resources Business Partner, attaching a note from my doctor, I requested the reasonable accommodation of continuing to work from home, due to my disability, including my high-risk status and being immunocompromised.

[16]     On April 9, 2020, in an email from Farinelli, she instructed me to submit an accommodation form, completed by my doctor, to remain working from home.

[17]     On April 13, 2020, my doctor sent Farinelli a detailed letter and the completed accommodation forms on my behalf, requesting the reasonable accommodation of continuing to work from home, due to my disability.

[18]    I continued to work from home as a reasonable accommodation for my disability.

[19]    On July 28, 2021, I attempted suicide.

[20]    On July 28, 2021, following the above, my spouse contacted Hoffman and told her that I had attempted suicide, was taken to the hospital by ambulance, was in the emergency room, and was transferred to Haven Behavioral Health. Hoffman asked my spouse to stay in contact with her regarding my condition and hospitalization.

[21]    Following the above, I went out of work on a medical leave of absence.

[22]    From July 28, 2021 to August 5, 2021, I was in the hospital in connection with my disability.

[23]    On August 1, 2021, my spouse contacted Hoffman and told her that I was still in the hospital.

[24]    On August 2, 2021, Hoffman contacted my spouse and asked if there were any updates regarding my condition. My spouse told Hoffman that she had not been able to speak with any medical professionals regarding my condition, so she did not have any updates at that time. Hoffman asked my spouse to keep her posted.

[25]    On August 3, 2021, my spouse told Hoffman that she visited me in the hospital, that I was still under observation, that I did not yet have a discharge date, and that she would continue to keep in contact with Hoffman.

[26]    On August 5, 2021, I returned home from the hospital.

[27]    On August 8, 2021, my spouse informed Hoffman that I had returned home from the hospital should be ready to return to work the next day, on August 9, 2021. Hoffman responded that I should contact her on August 9, 2021.

[28]      On August 9, 2021, in a phone call with Hoffman, she told me that I had been placed on an FMLA leave and could not return to work until I submitted certain medical leave forms, completed by my doctor.

[29]      On August 10, 2021, in a phone call with Heather Moore, Employee Health, I requested the required FMLA forms for completion, as I had been placed on FMLA leave.

[30]      On August 10, 2021, following the above, in an email from Moore, she attached the required FMLA forms, which were dated August 7, 2021.

[31]      On or about August 13, 2021, my doctor sent the completed FMLA forms to Respondents.

[32]      On August 16, 2021, in a voice message from Bonnie Gruber, Employee Health and Leave Management, I was told that I was in danger of being written up for "no call, no show" because I had not returned to work and did not call out for the day. I was instructed to contact my manager every day I would be out of the office until my leave of absence was approved.

[33]      On August 16, 2021, following the above, in a phone call with Gruber, I stated that my doctor had cleared me to return to work, from my medical leave of absence, on August 18, 2021. Gruber stated that I would need to have clearance from Respondents' Employee Health to return to work.

[34]      On August 17, 2021, in a text message to Hoffman, I stated that my doctor had cleared me to return to work from my medical leave of absence on August 18, 2021.

[35]      On August 17, 2021, following the above, I submitted to Respondents the requested competed paperwork and a doctor's note, which stated that I was cleared to return to

work on August 18, 2021 with the reasonable accommodation of working from home due to my disability.

[36]    On August 17, 2021, following the above, in a phone call with Hoffman, I stated that my doctor had cleared me to return to work from my medical leave of absence on August 18, 2021. She stated that she could not have me return to work on August 18, 2021, but instead instructed me to meet with her in person at the office on August 23, 2021 to discuss my job. Hoffman stated that she expected me to be at work, in person, for the full day, and to continue working in person from the office. I asked why my reasonable accommodation of working remotely had changed. She did not answer my question and reiterated that she would need me to report to the office in person.

[37]    On August 20, 2021, following the above, in a phone call with Moore, I stated that Hoffman instructed me to meet with her in person at the office on August 23, 2021 to discuss my job, and that I was again requesting the accommodation of working from home, as I had been doing since April 2020. I was instructed to have my doctor complete a new accommodation request form. Moore stated that she would contact Hoffman and that I did not need to report in person to the office.

[38]    On August 25, 2021, I submitted to Respondents a Request for Accommodation and a Medical Status Evaluation form, completed by my doctor, in which I requested the reasonable accommodation of working from home, due to my disability.

[39]    On August 31, 2021, I spoke with Moore regarding my return to work, as I had not received any communication from Respondents since having submitted my accommodation request forms. She confirmed that Respondents had received my completed

accommodation request forms, and stated that she had already extended my FMLA leave to September 6, 2021.

[40]    On September 7, 2021, I spoke with _____, Human Resources, regarding my return to work, as I had not received any further communication from Respondents. I was told that Human Resources would look into the issue and would have to contact Employee Health and Leave Management regarding the same.

[41]    On September 13, 2021, I spoke with _____, Human Resources, regarding my return to work, as I had not received further communication from Respondents. I was told that Human Resources still had no updates and would contact Employee Health and Leave Management regarding the same.

[42]    On September 14, 2021, I spoke with _____, Human Resources, regarding my return to work, as I had not received further communication from Respondents. I was told that Human Resources still had no updates and would contact Employee Health and Leave Management regarding the same. I stated that I had been trying to return to work for weeks, and was frustrated that I had not been called back and there were still no answers.

[43]    On September 21, 2021, I spoke with _____, Human Resources, regarding my return to work, as I had not received further communication from Respondents. I was told that Human Resources still had no updates and would contact Employee Health and Leave Management regarding the same. I stated that I had been trying to return to work for weeks, and was frustrated that I had not been called back and there were still no answers. I requested that this matter be escalated to a higher level since I had not received any updates from Respondents since having submitted my accommodation request forms. I was transferred to speak with Andrea Cabrelli, Human Resources Business Partner. I provided her with a summary

of my situation, stated that I had been trying to return to work for weeks, had submitted my completed accommodation request forms, and was being prevented from returning to work despite having been cleared to return to work. Cabrelli stated that she would need to get me in touch with Farinelli.

[44]    On September 21, 2021, following the above, I spoke with Farinelli regarding my return to work. I provided her with a summary of my situation, stated that I had been trying to return to work for weeks, had submitted my completed accommodation request forms, and was being prevented from returning to work despite having been cleared to return to work. I was told that she needed to speak with Leave Management and Hoffman to obtain additional information, and that she would be in contact with me.

[45]    On September 22, 2021, in a text message from Farinelli, she stated that she "need[ed] to connect with leave before we talk[ed]," and that she would "keep [me] posted tomorrow."

[46]    On September 23, 2021, I sent a text message to Farinelli, requesting an update on my return to work.

[47]    On September 27, 2021, in a text message from Farinelli, she stated that she was "hoping to schedule a call" for Hoffman and me. I replied that I was available.

[48]    On September 29, 2021, in a text message from Farinelli, she stated that she scheduled me for a phone call with Hoffman, Ziolkowski, and her on October 1, 2021.

[49]    On September 29, 2021, in a response text message to Farinelli, I stated that I needed resolution to this situation, as I was cleared to return to work on August 18, 2021, and I have been pushed off with no answers from Respondents since then. I stated that I was ready for the scheduled phone call.

[50]    On October 1, 2021, in a phone call with Hoffman and Ziolkowski, Respondents terminated my employment, effective immediately. The stated reason was that, due to my medical leave, Respondents were forced to absorb my job duties. I was told that my position was eliminated. I asked whether there were any other, open positions to which I could be transferred. I was told that Respondents no longer needed me at their practice. I was told that Respondents were not able to accommodate me for my disability, with my request to continue working remotely.

[51]    Respondents terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability and/or my taking medical leaves of absence for my disability.

[52]    On October 4, 2021, in a text message from Farinelli, she apologized for not being able to join the phone call on October 1, 2021.

[53]    I was not provided with any explanation, including the criteria, as to why I was terminated and nondisabled employees[1] who had not sought reasonable accommodations for a disability[2] were retained.

[54]    Respondents refused to allow me to return to work following my medical leave of absence in connection with my disability.

[55]    I was the only employee reporting to Hoffman who was terminated on October 1, 2021.

[56]    Before I disclosed my disability to Respondents and sought reasonable accommodations for my disability, including medical leaves of absence, I had no indication that my job was in jeopardy.

---

[1] References herein to an employee not having a disability are to the best of my knowledge.
[2] References herein to an employee not having sought reasonable accommodations for a disability are to the best of my knowledge.

[57]    I had no performance or disciplinary issues throughout my employment.

[58]    I was provided with no opportunity to remain employed with Respondents.

[59]    Respondents assigned my job duties to nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or taken medical leaves absence. I was more qualified to perform my job duties than the nondisabled employees who did not seek reasonable accommodations for a disability or take medical leaves of absence to whom Respondents assigned my job duties.

[60]    Respondents' disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my disability (including history of and regarded as) and retaliated against me for seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

_X_    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  _(a); (d)_**

___    Section 5.1 Subsection(s) _____

___    Section 5.2 Subsection(s) _____

___    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

    **X**    **This charge will he referred to the EEOC for the purpose of dual**

**filing.**

6.    The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

_1/28/2022_
(Date Signed)

(Signature)    Christen Hartman

Exhibit "2"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:**   Christen Hartman

██████████████

**Re:**   Christen Hartman v. Tower Health
EEOC Charge Number: 17F-2022-60589

EEOC Representative and email:   State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough  9/18/2023

Karen McDonough
Deputy District Director

cc:    For Respondent                          For Charging Party

Albert D Wade                         Emily R. Derstine Friesen, Es
Stevens & Lee                         Console Mattiacci Law LLC
1500 Market Street East Tower, Suite 1800   1525 Locust Street, 9th Floor
Philadelphia, PA 19102                Philadelphia, PA 19102